IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Timothy Tyrone Garvin, #306717, | ) | |
| | ) | C.A. No. 2:09-202-HMH-RSC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Detective Kirk L. Owen; Officer Mike | ) | |
| Grabowski; Officer Bryan Griswold; | ) | |
| Investigator Chuck Cain; Officer Truxton | ) | |
| Umsted; Officer Christopher Hammell; | ) | |
| Chief Pete Frommer; Sheriff Michael E. | ) | |
| Hunt, each in his individual, collective, | ) | |
| and official capacity while acting within the | ) | |
| scope of his employment and acting under | ) | |
| color of state law; Aiken County; | ) | |
| Aiken City, each in its individual, | ) | |
| collective, and official capacity while | ) | |
| acting within the scope of its employment | ) | |
| and acting under color of state law, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States

Magistrate Judge Robert S. Carr, made in accordance with 28 U.S.C. § 636(b) and Local Civil

Rule 73.02 for the District of South Carolina.[1]  Timothy Tyrone Garvin ("Garvin"), a state

prisoner proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983.  In his Report and

Recommendation, Magistrate Judge Carr recommends dismissing Officer Bryan Griswold

("Griswold"), Officer Truxton Umsted ("Umsted"), Officer Christopher Hammell ("Hammell"),

---

[1]The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  See Mathews v. Weber, 423
U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those
portions of the Report and Recommendation to which specific objection is made.  The court may
accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge
or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

Chief Pete Frommer ("Chief Frommer"), Sheriff Michael E. Hunt ("Sheriff Hunt"), Aiken

County and Aiken City without prejudice and without issuance and service of process.  In

addition, Garvin has filed a motion to amend the complaint, as well as a motion to alter or

amend this court's February 19, 2009 order dismissing Garvin's malicious prosecution claim.

Garvin filed objections to the Report and Recommendation.  For the reasons stated below, the

court adopts the Report and Recommendation, denies Garvin's motion to amend, and denies

Garvin's motion to alter or amend.

## I. Factual and Procedural Background

In his complaint, Garvin alleges that on "December 8, 2006, Defendant Officer Mike

Grabowski [("Grabowski")] arrested a female named Jacqunia S. Nicholson [("Nicholson")] on

the charge of Forgery" and "Ms. Nicholson advised [Grabowski] that she had received the check

in question . . . from a Daryl subject. . . ."  (Compl. ¶ 8.)  Garvin alleges that Detective Kirk

Owen ("Owen"), Grabowski, and Investigator Chuck Cain ("Cain") "witnessed and

interviewed" Nicholson and that Owen and Cain falsely stated in the supplemental reports that

Nicholson stated that "she . . . did observe and actually saw Plaintiff Timothy Tyrone Garvin

Completely fill out and sign one of the checks" at issue.  (Id. ¶ 9.)  Nicholson allegedly further

told officers that Garvin was not involved in the scheme for the money.  Garvin alleges that

Nicholson actually told Owen, Grabowski, and Cain that she did not know who signed the check

and assumed it was Garvin.

On January 19, 2007, Latoya Dunbar ("Dunbar") was arrested for cashing fraudulent

checks and Owen, in his supplemental report, allegedly stated that Dunbar "got the checks from

the Plaintiff Timothy Tyrone Garvin but he knew that there was no probable cause or evidence,

circumstantial or factual for him to believe this."  (Id. ¶ 10.)  Garvin submits that Owen

deliberately "made material false statements in his Criminal Arrest Warrant Applications and Warrant Affidavits and therefore mislead [the] Municipal Judge . . . to establish probable cause." (Id. ¶ 12.) In his complaint, Garvin "asserts violations of his fourth (4), fourteenth (14), and eighth (8) amendments to the constitution of the United States, malicious prosecution one (1), malicious prosecution (2), false imprisonment, civil conspiracy, supervisor liability, fraud, perjury, and numerous other violations of state law." (Compl. 1.)[2] He seeks compensatory and punitive damages.

## II. DISCUSSION OF THE LAW

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

After review, the court finds that Garvin has raised several objections. First, Garvin objects to the magistrate judge's conclusion that he has failed to state a claim against Griswold, Umsted, Hammell, Chief Frommer, and Sheriff Hunt. Garvin's complaint is devoid of any specific factual allegations against these defendants. Further, Garvin's proposed amended complaint alleges no actions by these defendants other than to generally allege that the "remaining defendants witnessed and participated and knew through 'viewing the DVD of the interview [with Nicholson] and/or otherwise.'" (Proposed Am. Compl. ¶ 9.) The court

---

[2]Garvin's false imprisonment claim was dismissed by this court on February 19, 2009.

interprets this statement liberally to allege that Griswold, Umsted, Hammell, Chief Frommer, and Sheriff Hunt viewed a DVD of Nicholson's interview and knew that Nicholson did not see Garvin prepare the fraudulent check, but that she assumed that he did. This allegation is insufficient to state a claim against Griswold, Umsted, Hammell, Chief Frommer, and Sheriff Hunt. "A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional right." Gary v. Brewington, 2008 WL 4458163, at *4 (D.S.C. Sept. 30, 2008) (unpublished) (citing Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)); Karafiat v. O'Mally, No. 02-3992, 2002 WL 31845135, at *1 (6th Cir. Dec. 17, 2002) (finding that the plaintiff's claims were "simply too vague and conclusory to support a claim under § 1983" because they "did not present any allegations to reflect the manner in which the defendants violated their rights, or how the defendants were involved in the alleged improper conduct"); Whaley v. Hatcher, No. 1:08CV125-01-MU, 2008 WL 1806124, at *1 (W.D.N.C. Apr. 18, 2008) (unpublished) (dismissing defendant Raymond Hamrick, Sheriff, because this defendant was not mentioned in the body of the complaint and because the plaintiff "does not allege any personal conduct or any policy by Defendant Hamrick with regard to the incidents that form the basis of his Complaint").

The substance of Garvin's complaint is that Owen, Cain, and Grabowski interviewed Nicholson; Owen and Cain prepared false reports stating that Nicholson stated in her interview that she observed Garvin fill out the fraudulent check; and Owen "made material false statements in his Criminal Arrest Warrant Applications and Warrant Affidavits and therefore mislead [the] Municipal Judge . . . to establish probable cause." (Compl. ¶ 12.) There is no reference to the other defendants in the factual allegations of the complaint and the only reference in the proposed amended complaint is that the remaining defendants viewed the DVD

interview of Nicholson.  Based on the foregoing, Garvin has failed to state a claim for relief against Griswold, Umsted, Hammell, Chief Frommer, and Sheriff Hunt.

In addition, Garvin objects to the magistrate judge's conclusion that his claims against Griswold, Umsted, Hammell, Chief Frommer, and Sheriff Hunt fail because these claims are based on respondeat superior liability.  Garvin argues that he has alleged supervisor liability which differs from respondeat superior.  Garvin is correct that supervisor liability is a separate and distinct claim.  However, this claim fails as well.  In order to establish supervisor liability a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Supervisor liability "is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Id. at 798 (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)).  "Documentation of widespread abuses are necessary to establish a sheriff's liability for constitutional violations by a subordinate.  Furthermore, the plaintiff cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." Caldwell v. Green, 451 F. Supp. 2d 811, 821 (W.D. Va. 2006) (internal quotation marks and citation omitted).

First, there are no allegations or evidence that Griswold, Umsted, and Hammer are supervisors. The only evidence is that Griswold is listed on the General Session Case File Index. Hammell prepared a report indicating that he extradited Garvin from Richland County Detention Center and transported him to "ADPS" Headquarters and served seven warrants on Garvin. (Motion Am. Compl. Exs. (General Session Case File Index).) In addition, there are no allegations or evidence regarding any conduct by Sheriff Hunt or Chief Frommer. Moreover, there are no allegations that these defendants were involved in or knew of any "risk of constitutional injury," that they demonstrated "deliberate indifference" to that risk, or that their actions were causally related to any injury suffered by Garvin. Shaw v. Stroud, 13 F.3d at 799. Further, Garvin alleges supervisor liability solely based on this single incident. Based on the foregoing, Garvin has failed to state a claim for supervisor liability and this claim is dismissed.

Further, to the extent Garvin is asserting causes of action against these defendants in their official capacities based on respondeat superior, this claim also fails. "Liability of local governments and their officials sued in their official capacity under § 1983 cannot be based on *respondeat superior* but arises only when city or county officials themselves, through an act establishing a policy or custom, cause the constitutional violation." Gordon v. Kidd, 971 F.2d 1087, 1097 (4th Cir. 1992). Garvin has alleged no specific policy or custom to support this claim.

Garvin further objects that he can sue Aiken County and Aiken City under § 1983. This argument is without merit. A party asserting a § 1983 action must allege that he was injured by "the deprivation of any [of his] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting under color of state law. 42 U.S.C. § 1983. Only "persons" can act under color of state law, and therefore, a defendant in a § 1983 action must

qualify as a "person."  Aiken County and Aiken City are not persons under § 1983.  <u>Allison v. California Adult Auth.</u>, 419 F.2d 822, 823 (9th Cir. 1969) (finding that prison is not a person subject to suit under 42 U.S.C. § 1983); <u>Preval v. Reno</u>, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (finding that a jail is not amenable to suit under 42 U.S.C. § 1983), <u>vacated in part on other grounds by</u>, 203 F.3d 821 (4th Cir. 2000); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.").  Therefore, Aiken County and Aiken City are dismissed.  After a thorough review of the magistrate judge's Report and the record in this case, the court adopts the Report and Recommendation.

Finally, Garvin has moved to amend his complaint.  The court has construed Garvin's proposed amended complaint liberally.  However, for the reasons set forth above and in the court's February 19, 2009 order, the court finds that granting Garvin's motion to amend would be futile as the proposed amendments are insufficient to state a false imprisonment claim and do not alter the courts' decision to dismiss Griswold, Umsted, Hammell, Chief Frommer, Sheriff Hunt, Aiken County, and Aiken City.  <u>See</u> <u>In re PEC Solutions, Inc. Sec. Litig.</u>, 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile.").  Therefore, the motion to amend is denied.  In addition, Garvin's motion to alter or amend the court's February 19, 2009 order, which the court construes as a motion for reconsideration pursuant to Rule 54 of the Federal Rules of Civil Procedure,[3] is denied.

---

[3]Garvin moved to alter or amend the judgment pursuant to Rule 59(e).  However, judgment has not been entered in this case.

Therefore, it is

**ORDERED** that Griswold, Umsted, Hammell, Chief Frommer, Sheriff Hunt, Aiken County, and Aiken City are dismissed without prejudice and without issuance and service of process.  It is further

**ORDERED** that Garvin's motion to alter or amend, docket number 21, is denied.  It is further

**ORDERED** that Garvin's motion to amend the complaint is denied.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
March 12, 2009

**NOTICE OF RIGHT TO APPEAL**

The Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.